## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GUSTAVO FLORES TORRES, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. |
| *Plaintiff*, | ) ) | |
| v. | ) ) ) | NOTICE OF REMOVAL (Pursuant to 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. §§ 1442(a)(1). 1332(d), 1441, 1446, and 1453) |
| COMMUNITY HEALTH CENTER, INC., | ) ) | |
| *Defendant*. | ) ) ) | [Federal Defendant] |

## INTRODUCTION

Pursuant to 42 U.S.C. § 233(*l*)(2), 28 U.S.C. § 1442(a)(1), and 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, and on the grounds set forth below, Defendant Community Health Center, Inc. ("CHCI"), removes to this Court the state court civil action captioned *Flores Torres v. Community Health Center, Inc.*, No. MMX-CV25-6044546-S, filed in Connecticut Superior Court, Judicial District of Middlesex at Middletown (the "State Court Action"). A copy of the complaint is attached hereto as Exhibit A and a copy of all processes, pleadings, and orders served upon CHCI in the State Court Action, as of the filing of this Notice of Removal, is attached as Exhibit B.

### I.    FACTUAL BACKGROUND[1]

1.    CHCI is a nonprofit, federally-supported community "health center" whose day-to-day operations are governed by Section 330 of the Public Health Service Act, codified at 42 U.S.C. § 254b *et seq.* As such, CHCI has long applied to the United States Department of Health and Human Services ("HHS"), on an annual basis, to be "deemed" a United States Public Health

---

[1] For purposes of this Notice of Removal only, CHCI assumes the truth of allegations set forth in the Plaintiff's complaint filed in the State Court Action. However, CHCI denies that it has any liability to Plaintiff or to the class they seek to represent.

Service ("PHS") employee in accordance with 42 U.S.C. § 233(g) and (h). HHS approved CHCI's applications for all periods relevant to this action, affording CHCI—and its officers, employees, governing board members, and certain contractors—an absolute immunity protection under 42 U.S.C. § 233(a). That immunity applies to *any* civil action or proceeding resulting from their performance of (or alleged failure to perform) "medical . . . or related functions" within the scope of their deemed federal employment. 42 U.S.C. § 233(a), (g), (h).

2.     CHCI's continuous deemed PHS employee status, since as early as calendar year 2010, is reflected on a web-based platform maintained by HHS's Health Resources and Services Administration ("HRSA"): https://data.hrsa.gov/tools/ftca-search-tool. The site lists each deemed entity by name, address, and calendar year "deeming period." *Id.* CHCI's deemed status is also reflected in a Notice of Deeming Action—issued by the Secretary of HHS—for each calendar year. The Notice of Deeming Action for calendar year 2024 HHS issued to CHCI is attached hereto as Exhibit C.

3.     This civil action falls squarely within 42 U.S.C. § 233(a)'s immunity protection. It arises out of CHCI's performance of mandatory and essential functions, *i.e.*, at the very least "related" to its medical functions within the meaning of § 233(a)'s recitation of immunized conduct. *See, e.g.*, *Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *8– 10 (S.D.N.Y. Mar. 12, 2024) (holding deemed health center defendant's alleged duty to safeguard patient data is a "medical . . . or related function"). The action results from a data breach of some of CHCI's systems that stored certain personally identifiable information ("PII") and protected health information ("PHI"). *See, e.g.*, Ex. A ¶¶ 1–6. The complaint alleges, in essence, that: (1) CHCI owes various duties to Plaintiff and the putative class members—arising out of their special patient-provider relationship—to protect and safeguard their personal information from

unauthorized disclosure or access, (2) CHCI breached those duties by failing to implement and maintain reasonable security procedures and practices to protect Plaintiff's and the putative class members' PII/PHI from unauthorized access and disclosure, and as a result (3) CHCI caused various harms to Plaintiff and the putative class members. *See, e.g., id.* ¶¶ 1–8, 13–31, 95–97, 129.

4.    Plaintiff asserts causes of action for negligence and negligence per se, breach of implied contract, invasion of privacy, and unjust enrichment. *Id.* ¶¶ 8, 87–151. Section 233(a)'s immunity—which is premised on the defendant's *conduct*, not the plaintiffs' theory of liability or cause of action—is easily broad enough to cover these claims. *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) (recognizing plain text of § 233(a) is broad enough to "easily accommodate both known and unknown causes of action").

5.    Plaintiff alleges that they are among a putative class of at least one hundred thirty thousand people. Ex. A ¶ 75. They bring this action individually and on behalf of a putative nationwide class, defined as "[a]ll individuals residing in the United States whose Private Information was compromised in the Data Breach with Community Health Center, Inc. on or before January 2, 2025." *Id.* ¶ 73. Plaintiff seeks relief including actual, compensatory, statutory and punitive damages, statutory penalties, equitable relief, injunctive relief, credit monitoring, interest, costs, attorneys' fees, and any other relief the Court may deem "just and proper." *Id.* at ¶ 134, 31–33 (Demand for Relief).

6.    Several other plaintiffs have initiated civil actions against CHCI in this Court, arising out of the same events. *See Donahue v. Community Health Center, Inc.*, 3:25-cv-00176-MPS (D. Conn. filed Feb. 5, 2025); *Fenn v. Community Health Center, Inc.*, 3:25-cv-00177-SRU (D. Conn. filed Feb. 5, 2025); *Rose-Daniels v. Community Health Center, Inc.*, 3:25-cv-00182-SVN (D. Conn. filed Feb. 6, 2025); *McCarthy v. Community Health Center, Inc.*, 3:25-cv-00183-

RNC (D. Conn. filed Feb. 6, 2025); *Janssens v. Community Health Center, Inc.*, 3:25-cv-00191-RNC (D. Conn. filed Feb. 7, 2025); *Johnson v. Community Health Center, Inc.*, 3:25-cv-00196-SVN (D. Conn. filed Feb. 7, 2025); *Murray v. Community Health Center, Inc.*, 3:25-cv-00226-RNC (D. Conn. filed Feb. 13, 2025). These actions were consolidated on March 7, 2025, with further proceedings to occur under the docket number of the first-filed action. *See* Order Granting Motion to Consolidate Cases, *Donahue*, 3:25-cv-00176-MPS, Dkt. No. 16 (D. Conn. Mar. 7, 2025).

7.     Other current or former patients of CHCI have likewise initiated actions in state court—all arising out the same events. *See Brown v. Community Health Center, Inc.*, MMX-CV-25-6044346-S (Conn. Super. Ct. filed Feb. 6, 2025; removed Mar. 14, 2025); *Rodriguez v. Community Health Center, Inc.*, NNH-CV-25-6152371-S (Conn. Super. Ct. filed Feb. 7, 2025; removed March 12, 2025); *Tedone v. Community Health Center, Inc.*, MMX-CV-25-6044349-S (Conn. Super. Ct. filed Feb. 7, 2025; removed Mar. 14, 2025); *Colino v. Community Health Center, Inc.*, HBB-CV-25-6093209-S (Conn. Super. Ct. filed Feb. 7, 2025; removed Mar. 10, 2025); *Frankfurter v. Community Health Center, Inc.*, MMX-CV-25-6044376-S (Conn. Super. Ct. filed Feb. 10, 2025; removed Mar. 10, 2025); *Ploss v. Community Health Center, Inc.*, MMX-CV-25-6044375-S (Conn. Super. Ct. filed Feb. 10, 2025; removed Mar. 10, 2025); *Horn v. Community Health Center, Inc.*, MMX-CV25-6044523-S (Conn. Super. Ct. filed Feb. 26, 2025; removed Mar. 17, 2025); *Dallape v. Community Health Center, Inc.*, FST-CV25-6072023-S (Conn. Super. Ct. filed Mar. 3, 2025); *Mims v. Community Health Center, Inc.*, HHD-CV25-5087948-S (Conn. Super. Ct. filed Mar. 24, 2025). Because the state court actions have not been consolidated, each is being removed separately.

## II.    VENUE AND REMOVAL PROCEDURES

8.      Venue is proper because this Notice of Removal is filed in the federal district court embracing the place where the local state court matter is pending. 28 U.S.C. §§ 1441(a), 1446(a).

9.      A copy of this Notice of Removal is being filed with the local state court where this action was filed. 28 U.S.C. § 1446(d).

10.     Pursuant to 42 U.S.C. § 233(*l*)(2), all proceedings in this case are automatically stayed pending the Court's hearing and threshold immunity determination. 42 U.S.C. § 233(*l*)(2) (upon removal, "[t]he civil action . . . *shall be stayed* in [the appropriate United States district court] until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination" (emphasis added)).

## III.    PARTIES

11.     CHCI operates a federally-supported community-based health center project that provides primary and related health care services, regardless of patient insurance status or ability to pay for services. *See* 42 U.S.C. § 254b(a), (b), (j), (k). CHCI serves specific geographic areas within Connecticut that HHS has designated as "medically underserved." *Id.* § 254b(a)(1). At all relevant times, CHCI was deemed by the HHS Secretary to be a PHS employee for purposes of § 233(a) immunity. Ex. C.

12.     According to the complaint, Plaintiff is a former and current patient of CHCI who has received health care services from CHCI. *See, e.g.*, Ex. A ¶ 68. The putative class consists of other current or former patients of CHCI. *See id.* ¶ 13, 73.

## IV.    REMOVAL IS TIMELY

13.     CHCI was served on February 24, 2025, and Plaintiff filed this action on the public docket on or about February 26, 2025. Ex. A and Ex. B at 6 (Service of Process). CHCI's federal

officer removals are timely. *Blumberger v. Tilley*, 115 F.4th 1113, 1123 (9th Cir. 2024) (recognizing removal under § 233(*l*) as timely "any time before trial" (citing 42 U.S.C. § 233(c)) and removal under § 1442 as timely within thirty (30) days of an initial pleading or "other paper" that affirmatively reveals facts necessary for federal-officer jurisdiction.), *pet. for reh'g en banc denied*, No. 22-56032, Dkt. No. 83 (Dec. 19, 2024). CHCI's removal under the Class Action Fairness Act of 2005 ("CAFA") is also timely. 28 U.S.C. § 1446(b); *see also Murphy Bros. v. Michetti Pipe Stinging, Inc.*, 526 U.S. 344, 348 (1999) (finding time period for removal begins when defendant is served).

14.     No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## V.    JURISDICTION

15.     This Court has jurisdiction over this civil action on three independent bases. First, removal, to adjudicate CHCI's immunity defense, is proper under two federal officer removal provisions: 42 U.S.C. § 233(l)(2), and 28 U.S.C. § 1442(a)(1). Second, removal is proper under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d).

### A.    This Court Has Jurisdiction Under Two Federal Officer Removal Statutes: 42 U.S.C. § 233(*l*)(2) and 28 U.S.C. § 1442(a)(1)

16.     CHCI is entitled to remove this case under two separate and distinct federal officer removal statutes: (1) 42 U.S.C. § 233(*l*)(2), which provides a removal right to entities and individuals the HHS Secretary has deemed to be PHS employees for purposes of the absolute immunity such status confers; and (2) 28 U.S.C. § 1442(a)(1), the general federal officer removal statute, which provides a removal right to federal officers and those acting under them sued in their official capacity.

**1.    This Court has jurisdiction under the Public Health Service Act, as amended by the Federally Supported Health Centers Assistance Act.**

17.    The Court has jurisdiction under 42 U.S.C. § 233(*l*)(2), a federal officer removal statute enacted to benefit deemed PHS employee defendants by providing them a right to a federal forum for a judicial determination as to the availability of their federal immunity defense. 42 U.S.C. § 233(*l*)(2) (permitting deemed defendants to remove actions against them where the Attorney General "fails" to fulfill its § 233(*l*)(1) obligation to remove on the deemed defendant's behalf); *see Blumberger*, 115 F.4th at 1117 ("[Section] 233(*l*)(1) obligates the Attorney General to report on the Secretary's deeming decision, not to report the Attorney General's ultimate coverage decision. . . . it is an employee's *deemed* status, not *covered* status, that triggers the removal provisions of § 233(*l*)(1). Any advice the Attorney General may give to the state court about its ultimate coverage decision has no legal consequence—one way or another—under § 233(*l*)(1).").

18.    Given § 233(*l*)'s commanding language and unmistakable thrust, this provision should be broadly construed to facilitate the removal, hearing, and judicial determination expressly contemplated therein. 42 U.S.C. § 233(*l*)(1) (providing that the Attorney General, "within 15 days after being notified . . . shall make an appearance" and "advise" the state court of the Secretary's deeming determination, which "shall be deemed to satisfy" § 233(c), which mandates removal); *Cf. Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969) (construing federal officer removal statute, 42 U.S.C. § 1442, broadly in favor of a federal forum to ascertain the availability of a federal defense arising out of official conduct); *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) ("[A]n immunity from suit rather than a mere defense to liability . . . like an absolute immunity . . . is effectively lost if a case is erroneously permitted to go to trial" (citing *Mitchell v. Forsyth*, 472 U. S. 511, 526 (1985)). The PHS Act imposes no time limit on § 233(*l*)(2) removals. *See Est. of Booker v. Greater Phila. Health Action*, 10 F. Supp. 3d 656, 665–66 (E.D. Pa. 2014) ("The fact

that § 233(*l*)(2) was added to a statutory scheme in which suits against health centers were removable at any time before trial provides a basis to infer that Congress intended the same time frame to govern removals by the health centers themselves"). Section 233(*l*)(2) overcomes the well-pleaded complaint rule.

### 2. Separately, this Court has jurisdiction under the general federal officer removal statute.

19.     The Court also has jurisdiction under 28 U.S.C. § 1442(a)(1), which affords a right of removal to "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). The statute—in particular its "acting under" provision—is broadly construed in favor of a federal forum. *See Colorado v. Symes*, 286 U.S. 510, 517 (1932) ("It scarcely need be said that such measures [allowing for federal officer removal] are to be liberally construed to give full effect to the purposes for which they were enacted."); *Willingham*, 395 U.S. at 406–07; *see also Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999) (Section 1442(a)(1) permits removal even when underlying federal question arises only as defense to state-law claim); *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (noting federal officer removal statute operates as an exception to the "well-pleaded complaint" rule).

20.     CHCI, a nonprofit corporation operating a federally-supported community health center project, is entitled to invoke § 1442(a)(1) as a person acting under a federal officer and, in asserting official immunity based on its "final and binding" status as a deemed PHS employee, 42 U.S.C. § 233(g)(1)(F), raises a colorable federal defense to plaintiffs' claims. *See Agyin v. Razmzan*, 986 F.3d 168, 177 (2d Cir. 2021) (concluding deemed health center was "subject to federal oversight and control" sufficient to render health center physician "acting under" a federal officer for 28 U.S.C. § 1442(a)(1)) and noting "the government itself has invoked § 1442 on behalf

of deemed employees" and "did not err in doing so"); *accord Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4907, 2023 WL 2662811, at *11 (S.D.N.Y. March 28, 2023) (concluding deemed health center facing putative data-breach class action was tasked "to 'carry out the duties of the federal government to provide medical care to the indigent,' [and] must keep patient records safe as required by federal statute, arguably qualifying [deemed health center's] actions as 'acting under' color of federal regulations" for purposes of 28 U.S.C. 1442(a)(1)); *see also Blumberger*, 115 F.4th at 1123 ("HHS's [deeming] notice provides *unequivocally clear and certain support* for [the deemed physician]'s contention he was acting 'pursuant to a federal officer's directions' when treating [the plaintiff] and that there is a 'colorable federal defense' pertaining to the medical malpractice claims." (emphasis added)); *Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 138 (2d Cir. 2024) (finding a "'colorable claim for removal under § 1442' is all it takes to trigger [appellate] review of a remand order, even if we ultimately determine that removal was improper") (citing *Agyin*, 986 F.3d at 174). On behalf of CHCI, the local United States Attorney has removed state court actions to this Court pursuant to § 1442; *see also, e.g.*, *Doe v. Community Health Center, Inc.*, No. 13-cv-01238-WWE (D. Conn. filed Aug. 26, 2013); *Gevaert v. Community Health Center, Inc.*, No. 14-cv-01233-MPS (D. Conn. filed Feb. 11, 2014).

> **3.    Deemed PHS employee status confers absolute immunity from suits resulting from official conduct and removal rights to vindicate the immunity defense in federal court.**

21.    Under the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, § 4, 84 Stat. 1868, 1870–71 (1970), codified at 42 U.S.C. § 233, PHS personnel are absolutely immune from any civil action or proceeding arising out of official conduct. § 233(a). Section 233(a) extends absolute immunity to PHS personnel by making the remedy for damages against the United States under the Federal Tort Claims Act ("FTCA") the *exclusive* remedy for such actions. *Id.*

22.    To facilitate the legislative objective of ensuring medical services in underserved areas, § 233(a) shields PHS personnel from personal liability arising out of their performance of medical, surgical, dental, and related functions. *Id.* Without such protection, the cost of professional liability insurance would greatly hinder or altogether preclude the performance of those duties. *See id.*; H.R. Rep. No. 1662, 91st Cong., 2d Sess. 1 (1970); 116 Cong. Rec. 42,543 (1970) (Rep. Staggers, House sponsor, stating PHS physicians "cannot afford to take out the customary liability insurance as most doctors do," "because of the low pay that so many of those who work in the [PHS] receive.").

23.    The Federally Supported Health Centers Assistance Act ("FSHCAA") of 1992, as amended in 1995, authorizes the HHS Secretary to extend to certain federally supported health centers and their officers, governing board members, and employees (and certain contractors) the same absolute immunity § 233(a) affords to actual PHS employees. 42 U.S.C. § 233(g)(1)(A), (B); *Friedenberg v. Lane County*, 68 F.4th 1113, 1126 (9th Cir. 2023) (concluding plain language in § 233(g)(1)(A) provides that "the protection in § 233(g) is the same as in § 233(a)"); *accord Agyin*, 986 F.3d at 177 (recognizing deemed PHS defendant "receive[s] from the federal government a delegation of the same legal immunity that is extended to employees of the Public Health Service").

24.    To qualify as a deemed entity for § 233(a) immunity purposes, a health center "receiving Federal funds under [42 U.S.C. § 254b]" must submit an application with detailed information and supporting documentation sufficient for the HHS Secretary to verify that the coverage should apply to all services provided by the health center to patients and, in certain circumstances, non-patients. 42 U.S.C. § 233(g)(1)(A), (g)(4). The applicant is also required to demonstrate that the health center meets four requirements listed in § 233(h), including a

requirement to "implement[] appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health-related functions performed by the entity*." 42 U.S.C. § 233(g)(1)(D) and (h) (emphasis added). The HHS Secretary must design an "application . . . to verify" that the health center applicant has done so. *Id.* § 233(g)(1)(D).

25.    In that HHS-prescribed "deeming" application—which sets conditions for deemed status—the health center applicant is required to (among other things) assure HHS it would "implement and maintain systems and procedures for *protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use*, consistent with federal and state requirements." HHS, Health Resources and Services Administration, *Calendar Year 2024 Requirements for FTCA Coverage for Health Centers and Their Covered Individuals* at 14, attached hereto as Exhibit D (emphasis added).[2]

26.    In applying for deemed PHS employee status, the health center must acknowledge that its "failure to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against loss, destruction, or unauthorized use may result in disapproval of [the HHS] deeming application." *Id.* Because HHS has identified Health Insurance Portability and Accountability Act ("HIPAA") complaint "*medical record confidentiality and security*" as one of the "areas/activities of *highest clinical risk* for the health center," a health center applicant is also required to develop, implement, and document the completion of an "annual health care risk management training plan for staff members" that included, among other things, training on "[HIPAA] and other applicable medical record confidentiality requirements." *Id.* at 10–11 (emphasis added).

---

[2] HHS issues a new deeming application each calendar year. Accordingly, the publicly available version of the application is for deeming in calendar year 2026: https://bphc.hrsa.gov/sites/default/files/bphc/data-reporting/pal-2025-01.pdf. Exhibit D is a true and correct copy of the calendar 2024 application, obtained when it was publicly available.

27.    The HHS Secretary must make a deeming determination for health centers and their personnel within 30 days of receipt of such an application. 42 U.S.C. § 233(g)(1)(E). The application seeks deemed federal status in advance of and for a specific prospective period (*i.e.*, one calendar year). A favorable deeming determination by the Secretary is "final and binding," *id.* § 233(g)(1)(D)–(F), on HHS, the Attorney General, and "other parties to *any* civil action or proceeding," *id.* § 233(g)(1)(F) (emphasis added), with respect to the designated period.

28.    By requiring a prompt and advance deeming determination, and conferring absolute immunity from any action or proceeding resulting from covered conduct in that period, the FSHCAA is designed to eliminate a federally-supported health center's need to purchase private liability insurance and to thus allow centers to devote their federal grant funds to patient services. *See* H.R. Rep. 102-823, pt. 1, 1992 U.S.C.C.A.N. 2627, 1992 WL 197773 at *3. "While Congress's concerns regarding malpractice insurance premiums were the driving force behind the legislation, Congress did not limit § 233 immunity to 'only' malpractice claims when it could have." *Friedenberg*, 68 F.4th at 1127–28 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000)).

29.    When a civil action or proceeding is brought against a deemed PHS employee, the entity or individual must deliver the pleadings to the grantor agency's designated representative, which is HHS's Office of General Counsel ("OGC"). HHS OGC is in turn required to "promptly" provide copies of the pleadings to the Attorney General and appropriate local U.S. Attorney. 42 U.S.C. § 233(b); *see also McLaurin v. United States*, 392 F.3d 774, 779 (5th Cir. 2004) (recognizing designated federal agency or "supervisor, not the employee . . . must 'promptly' deliver the suit papers to the government").

30.    Upon notification of a state court action against a deemed individual or entity, the Attorney General must appear in that court within 15 days of notice of the lawsuit to report whether

the "Secretary has determined under subsections (g) and (h) of [Section 233], that such entity, officer, governing board member, employee, or contractor of the entity is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." 42 U.S.C. § 233(*l*)(1). For purposes of § 233(*l*)(1)'s *removal* provision, the Attorney General's report to the state or local court of the Secretary's deeming determination is "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity, officer, governing board member, employee, or contractor of the entity was acting within the scope of their employment or responsibility." *Id.* § 233(*l*)(1); *cf.* 28 U.S.C. § 2679(d)(3). Section 233(*l*)(1) constructively satisfies § 233(c) to trigger removal but does not restrict or alter the Attorney General's discretion under § 233(c) to make, decline to make, or withdraw a scope of employment certification. *See Blumberger*, 115 F.4th at 1135, 1140 (noting Attorney General "is free to contest" a deemed defendant's claimed immunity at a "hearing" in federal court) (citing § 233(c)).

31.     If, despite the mandatory duty under § 233(*l*)(1), the Attorney General (or an authorized representative) "fails" to effectuate removal within 15 days of notice of the state action, the deemed entity or individual has an absolute right to remove the matter to the appropriate federal district court, without any time limit for doing so. 42 U.S.C. § 233(*l*)(2).

32.     Upon removal, the state court proceeding is stayed until the federal district court conducts a "hearing" to determine the proper forum or procedure and issues an order consistent with its determination. *Id.*; *Blumberger*, 115 F.4th at 119 ("If the case has been removed by an employee without action by the Attorney General, the state court is deprived of jurisdiction, and the case is stayed until the federal court 'conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim.'").

13

33.     The hearing in federal district court following § 233(*l*) removal allows any party to challenge the federal government's failure or refusal to certify that the deemed defendant was performing medical or related functions within the scope of its employment as a deemed PHS employee with respect to claims against it. *Blumberger*, 115 F.4th at 127. Where, as here, the claim is covered by the deemed defendant's § 233(a) immunity, § 233(*l*)(2) ensures that the United States is substituted as the only proper defendant its place. *See id.* at 1135, 1140; *Agyin*, 986 F.3d at 184; *Friedenberg*, 68 F.4th at 1131.

**4.     CHCI, a deemed PHS employee sued for its performance of medical or related functions undertaken within the scope of its deemed federal employment, is absolutely immunity from this action under 42 U.S.C. § 233(a).**

34.     Plaintiff's exclusive remedy with respect to the alleged acts or omissions of CHCI is a claim against the United States under the FTCA. *See* 42 U.S.C. § 233(a) (providing that remedy against United States under FTCA "shall be exclusive of any other civil action or proceeding").

35.     CHCI submitted deeming applications for itself and its personnel with respect to all times relevant to this action. The HHS Secretary, under 42 U.S.C. § 233(g) and (h), approved the applications and deemed CHCI and its personnel to be PHS employees for purposes of the protections afforded under § 233(a) *et seq. See* https://data.hrsa.gov/tools/ftca-search-tool; *see also* Ex. C (Notice of Deeming Action for calendar year 2024).

36.     On February 26, 2025, Plaintiff filed his complaint in state court. At its core, the complaint alleges CHCI failed in its duty to implement adequate and reasonable measures for protecting the confidentiality of patient information and safeguarding it against unauthorized disclosures and, as a result, cybercriminals accessed and acquired the PHI/PII of Plaintiff and the putative class members. Ex. A ¶¶ 1–8; *see also id.* ¶¶ 13–31.

37.    CHCI reported this action to the HHS Secretary's designated point of contact (*i.e.*, HHS OGC) on February 14, 2025. *See* Email from CHCI to HHS, attached hereto as Exhibit E.

38.    On March 4, 2025, the Attorney General (through a local representative Assistant United States Attorney) appeared in the state court, advising the court that: the Secretary had granted CHCI's deeming applications (under § 233(g) and (h)) for the period in which the events giving rise to this action occurred, but that the Attorney General had denied coverage and thus would neither intervene nor remove the case to federal court. Ex. B at 9–10 (Notice of the United States).

39.    Because the Attorney General failed to remove this action as required by 42 U.S.C. § 233(*l*)(1), CHCI is exercising its removal rights to vindicate its § 233(a) immunity.

40.    The immunity at issue encompasses any action or proceeding arising out of "medical . . . or *related functions*." 42 U.S.C. § 233(a) (emphasis added); *see Cuoco*, 222 F.3d at 108 (rejecting argument § 233(a) immunity applies only to medical malpractice claims and explaining when Congress intends to so limit immunity, it does so explicitly)); *accord Krandle*, 2024 WL 1075359, at *4 (interpreting *Cuoco* to recognize that related functions need not arise during the provision of medical treatment); *see also Friedenberg*, 68 F.4th at 1127–28 ("The statutory text of § 233(a) clearly shows that immunity is not tied to whether the tort transpired in caring for the patient . . . . Congress did not limit § 233 immunity to 'only' malpractice claims when it could have.").

41.    Plaintiff's claims against CHCI resulted from its "performance of medical . . . or related functions" within the scope of its deemed federal employment. 42 U.S.C. § 233(a). On its face, the complaint alleges that CHCI, with respect to Plaintiff and its other similarly situated

patients, breached its duty to maintain and secure the confidentiality of their respective PII/PHI and, as a result, caused them harms. *See, e.g.*, Ex. A ¶¶ 1–7.

42.     Maintaining the confidentiality of a patient's personal and confidential information is a function related to—indeed inseparable from—CHCI's medical functions. Among the many requirements imposed on CHCI as conditions of its federal funding are obligations to maintain patient confidentiality and protect patient privacy. *See, e.g.*, 42 U.S.C. § 254b(k)(3)(C) (prohibiting HHS's approval of a health center's grant application absent a determination of compliance with requirement to "have an ongoing quality improvement systems that includes clinical services and management, and *that maintains the confidentiality of patient records*" (emphasis added)); 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent. . . ."); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

43.     Plaintiff's claims arise out of "health or health-related functions," 42 U.S.C. § 233(h)(1), that are: quintessential to CHCI's health center project, statutorily mandated, and a condition of its deemed PHS status—*i.e.*, "to implement and maintain systems and procedures for protecting the confidentiality of patient information and safeguarding this information against . . . unauthorized use." *See, e.g.*, Ex. D at 15.

44.     The complaint alleges CHCI failed to adequately perform these very functions. *See, e.g.*, Ex. A ¶ 88, 95 (alleging breach of CHCI's duty "to act with reasonable care to secure and safeguard [Plaintiff's and Class Members'] Private Information.").

45.     Several courts have correctly recognized claims concerning a deemed PHS defendant's alleged failure to safeguard confidential patient information as arising out of a "medical . . . or related function" within the meaning of 42 U.S.C. § 233(a). *See, e.g.*, *Krandle*, 2024 WL 1075359, at *9–10, *Doe v. Neighborhood Healthcare*, No. 21-cv-01587, 2022 WL 17663520, at *6–8 (S.D. Cal. Sept. 8, 2022); *Kezer v. Penobscot Cmty. Health Ctr.*, No. 15-cv-00225, 2019 BL 141566, at *8 (D. Me. Mar. 21, 2019). *But see Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252 (4th Cir. 2024), *cert. pet. den.*, No. 24-483 (March 3, 2025); *Marshall v. Lamoille Health Partners, Inc.*, No. 22-cv-166, 2023 WL 2931823, at *4–5 (D. Vt. Apr. 13, 2023).

**B.      This Court Has Original Jurisdiction Under the Class Action Fairness Act**

46.     As additional grounds for removal, this Court has original jurisdiction under CAFA, codified in pertinent part at 28 U.S.C. § 1332(d). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million and any member of the putative class is a citizen of a different state than that of the defendant. 28 U.S.C. § 1332(d).

47.     CAFA "significantly expanded federal jurisdiction in diversity class actions" and "was designed to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quotations omitted).

48.     So, "no antiremoval presumption attends cases invoking CAFA," and "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.* (quoting *Dart Cherokee Basin*

*Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

49.     As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), CHCI may remove the State Court Action because this case (i) is pled as a putative class action with over 100 proposed plaintiff class members, (ii) that involves a minimal diversity of citizenship among the parties, and (iii) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d); *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 239 (2d Cir. 2014).

## 1.     Plaintiff alleges a putative class with over 100 proposed members.

50.     The putative class, as defined by Plaintiff, includes "[a]ll individuals residing in the United States whose Private Information was compromised in the Data Breach with Community Health Center, Inc. on or before January 2, 2025." Ex. A ¶ 73.

51.     Plaintiff alleges that there are at least one hundred thirty thousand members of the putative class. *Id.* ¶ 75.

52.     Accordingly, as currently defined by Plaintiff, the putative class more than meets the 100-person statutory requirement. Thus, the first CAFA jurisdictional requirement is satisfied. 28 U.S.C. § 1332(d)(5)(B).

## 2.     Minimal diversity of citizenship exists.

53.     Federal courts may exercise jurisdiction over a class action if any class member is a citizen of a different state from any defendant. 28 U.S.C. § 1332(d)(2)(A). *See Dart Cherokee*, 574 U.S. at 84–85 (noting pursuant to 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant.").

54.    CHCI is a nonprofit corporation organized under the laws of Connecticut with its principal place of business in Connecticut. For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *see also Blockbuster*, *Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006). Thus, CHCI is a citizen of Connecticut.

55.    Plaintiff, as an individual, is domiciled in Connecticut. Ex. A ¶ 9. For purposes of diversity jurisdiction, an individual is deemed a citizen of the state where he or she is domiciled. A person's "domicile" refers to the state where he or she "has a fixed residence with the intent to remain there indefinitely." 28 U.S.C. § 1332(a)(1). "Domicile requires residence in the state and an intent to remain in the state." *Preston v. Tenet Healthcare Indians*, 485 F.3d 793, 798 (5th Cir. 2007) (citing *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). Thus, Plaintiff is deemed a citizen of Connecticut.

56.    Minimal diversity exists if at least one putative class member was domiciled in any state other than Connecticut when Plaintiff filed the complaint. *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 628 (S.D.N.Y. 2013) (minimal diversity is satisfied where "at least one member of the putative class is diverse from at least one defendant"); 28 U.S.C. § 1332(d)(7) (citizenship of putative class members determined "as of date of filing of complaint or amended complaint"). Notice of the incident was sent to individuals in every state, and Plaintiff's putative class consists of "[a]ll individuals" that were affected by the data breach. Ex. A ¶ 73. Thus, the proposed class includes individuals who are citizens of states other than Connecticut, and minimal diversity is established pursuant to CAFA. *Dart Cherokee*, 574 U.S. at 84–85.

### 3.      The CAFA amount in controversy is satisfied.[3]

57.      The final requirement for CAFA jurisdiction—that the amount in controversy exceeds $5 million—is also met in this case. 28 U.S.C. § 1332(d)(2).

58.      Courts "generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal." *Blockbuster*, 472 F.2d at 56–57. Where, as here, the complaint fails to allege a specific damages amount, courts may rely on allegations in the notice of removal. *See Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000) (courts "look first to the plaintiffs' complaint and then to [the defendant's] petition of removal" in determining whether removing defendants have met their burden).

59.      Courts may consider the combined total amount of alleged actual damages and punitive damages. *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount."); *see also* 14A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3704.2 (4th ed.) ("Thus, when CAFA applies . . . the total amount of the claimed punitive damages are to be applied to the statute's $5 million jurisdictional amount requirement.").

60.      The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement. *Dart Cherokee*, 574 U.S. at 89.

---

[3] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5 million threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or are entitled to damages in any amount. CHCI asserts immunity and otherwise denies liability, denies Plaintiff is injured or entitled to recover any amount, and denies that a class can be properly certified in this matter.

"Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegations." *Id.* Moreover, "[i]n determining whether the amount in controversy exceeds $5 million, Courts must aggregate the claims of all individual class members." *Mealer v. Reg'l Mgmt. Corp.*, No. 16-cv-3343-B, 2017 WL 3421130, at *3 (N.D. Tex. Aug. 8, 2017) (citing 28 U.S.C. § 1332(d)(6)).

61.    Once the removing party establishes that the jurisdictional minimum is satisfied, the opposing party must show to a legal certainty that the amount recoverable does not meet the threshold. *Brashear v. Panini Am., Inc.*, No. 19-cv-201-L, 2020 WL 13413474, at *4 (N.D. Tex. May 21, 2020). "[I]t is what the plaintiff is claiming and not what the plaintiff is likely to be awarded that determines whether CAFA's jurisdictional amount requirement is satisfied." *Carter v. Westlex Corp.*, 643 F. App'x 371, 376 (5th Cir. 2016) (citations and internal punctuation omitted).

62.    As demonstrated below, Plaintiff's alleged individual damages, combined with his other claims and damages allegations, and those of the putative class, make it clear that the amount in controversy exceeds $5 million.

63.    Plaintiff alleges that at least one hundred thirty thousand individuals were impacted because of the data breach. Ex. A ¶ 75.  Plaintiff seeks a panoply of monetary and injunctive relief including actual, compensatory, statutory and punitive damages, statutory penalties, equitable relief, injunctive relief, credit monitoring, interest, costs, attorneys' fees, and any other relief the Court may deem "just and proper." *Id.* at ¶ 134, 31–33 (*Demand for Relief*).

64.    <u>Credit Monitoring Expenses</u>. Three main identity-protection agencies—IDShield, Equifax, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.95 to $24.99 per person per month. For example, IDShield Individual offers one-bureau credit

monitoring with an unlimited service guarantee, dark web internet monitoring, credit threat notifications, full-service restoration when theft occurs, and 24/7 assistance, among other services, for $14.95 per month for one individual.[4] Similarly, both Equifax[5] and Experian[6] offer products that provide 3-Bureau credit monitoring with up to $1 million in identity theft insurance for $19.95 and $24.99 a month, respectively. Though Plaintiff seeks five years of credit monitoring services for at least one hundred thirty thousand putative class members, Ex. A at 33 (*Demand for Relief*), the cost of providing just one year of credit monitoring services to 30,000 individuals at $14.95 per month (the cheapest of the three products) is approximately $5,382,000.

65.    <u>Injunctive Relief</u>. The above-discussed, alleged damages are further compounded by Plaintiff's request for injunctive relief on behalf of himself and a putative class. *Id.*; *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking…injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Plaintiff's allegations in the complaint are insufficient to allow CHCI to calculate the amount of these alleged damages and relief. However, CHCI underscores these allegations as further evidence that the amount in controversy exceeds $5 million, as already established.

66.    Accordingly, because this case was pled as a class action with requisite minimal diversity, class size, and amount in controversy under CAFA, removal is proper.

---

[4] *See IDShield Plans & Pricing*, https://www.idshield.com/#plans (last visited Mar. 8, 2025); *see also* IDShield Individual http://checkout.idshield.com/?plan=IDSI&freetrial=true&region=TX (last visited Mar. 8, 2025).
[5] *See Equifax*, https://www.equifax.com/index/ (last visited Mar. 8, 2025).
[6] *See Experian*, https://www.experian.com/protection/compare-identity-theft-products/ (last visited Mar. 8, 2025).

## VI.    RESERVATION OF RIGHTS AND DENIAL OF LIABILITY

67.    Nothing in this Notice of Removal is intended to be, or should be construed as, an express or implied admission by CHCI of any fact alleged by Plaintiff; of the validity or merit of any of Plaintiff's claims and allegations; or as a limitation of any of CHCI's rights, claims, remedies, and defenses in connection with this action.

68.    Pursuant to Rule 81(c) of the Federal Rules of Civil Procedure, CHCI will present its defenses by pleading at the time prescribed therein, and specifically reserves its rights to assert all defenses, including those defenses under Rule 12(b). CHCI intends no admission of fact, allegation, claim, liability or wrongdoing by this Notice of Removal, and expressly reserves all defenses, motions, and pleas, including, without limitation, objections to the sufficiency of Plaintiff's pleadings and the propriety of class certification. CHCI further reserves the right to submit additional evidence in support of the Notice of Removal, including as may be necessary to address and refute any contentions set forth in a motion to remand.

## VII.    CONCLUSION

For the foregoing reasons, CHCI respectfully requests that the above-captioned action filed in Superior Court for the Judicial District of Middlesex at Middletown be removed to this Court. Furthermore, the Court should, after conducting a hearing pursuant to 42 U.S.C. § 233(*l*)(2), substitute the United States as the only proper defendant in place of CHCI in the above-captioned action.

Dated: March 26, 2025

Respectfully submitted,

COMMUNITY HEALTH CENTER, INC

By:  */s/ Philip H. Bieler*
     Philip H. Bieler (CT16252)
     Baker Hostetler. LLP
     45 Rockefeller Plaza 14th Floor
     New York, New York 10111
     Tel.: (212) 847-2868
     Fax: (212) 589-4201
     pbieler@bakerlaw.com

     /s/ *Matthew S. Freedus*
     Matthew S. Freedus*
     DC Bar No. 475887
     FELDESMAN LEIFER LLP
     1129 20th Street, N.W., 4th Floor
     Washington, DC 20036
     Tel: 202.466.8960
     mfreedus@feldesman.com

    *\*Pro hac application will be filed promptly*

    *Counsel for Defendant Community Health
    Center, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GUSTAVO FLORES TORRES, individually and on behalf of all others similarly situated, | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| COMMUNITY HEALTH CENTER, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |

The undersigned hereby certifies that on this 26th day of March 2025, a true and correct copy of foregoing Notice of Removal, was served upon the below parties via First Class, U.S. Mail, postage prepaid and email:

Serg Lemberg, Esq.
**LEMBERG LAW LLC**
43 Danbury Road
Wilton, Connecticut 06897
Tel.: (203) 653-2250
slemberg@lemberglaw.com

James F. Woods, Esq.*
Annie E. Causey, Esq.*
**WOODS LONGERGAN PLLC**
60 East 42nd Street, Suite 1410
New York, New York 10165
Tel.: (212) 684-2500
jwoods@woodslaw.com
acausey@woodslaw.com

Jon Tostrud, Esq.*
**TOSTRUD LAW GROUP, PC**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel.: (310) 278-2600
jtostrud@tostrudlaw.com

Erik H. Langeland, Esq.

Marc H. Silverman
Acting United States Attorney
John W. Larson
Assistant United States Attorney
**UNITED STATES ATTORNEY'S
OFFICE, DISTRICT OF CONNECTICUT**
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: 860-947-1101
John.larson@usdoj.gov

**ERIK H. LANGELAND, P.C.**
733 Third Avenue, 16th Floor
New York, New York 10017
Tel.: (212) 354-6270
elangeland@langelandlaw.com

Carl V. Malmstrom
**WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLC**
111 W. Jackson Blvd., Suite 1700
Chicago, Illinois 60604
Tel:(312) 984-0000
malmstrom@whafh.com

Rachele R. Byrd
**WOLF HALDENSTEIN ADLER FREEMAN
& HERZ LLP**
750 B Street, Suite 1820
San Diego, California
Tel.: (619) 239-4599
byrd@whafh.com

Respectfully Submitted,

BAKER HOSTETLER

*/s/ Philip H. Bieler*
Philip H. Bieler (CT16252)